UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELROY WASHINGTON,

                        Petitioner,

            -vs-                              **No. 09-CV-0805(MAT)**
                                             **DECISION AND ORDER**

JAMES BERBARY, Superintendent,

                        Respondent.

## I.    Introduction

Proceeding <u>pro</u> <u>se</u>, Elroy Washington ("Washington" or "Petitioner") has instituted the instant action pursuant to 28 U.S.C. § 2254 alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner's state custody arises from a judgment of conviction entered on November 3, 2005, following a jury trial in New York State County Court, Genesee County, convicting him of Criminal Possession of a Controlled Substance in the First Degree (New York Penal Law ("P.L.") § 220.21). Petitioner was sentenced to a determinate prison term of ten years, plus five years of post-release supervision and is currently incarcerated at Collins Correctional Facility pursuant to this judgment of conviction.

## II.   Factual Background and Procedural History

### A.    The Trial

#### 1. The People's Case

At about 8:00 p.m. on June 16, 2004, Officer Matthew Baldwin ("Off. Baldwin"), of the Batavia City Police Department, heard a radio report that a nearby car was driving erratically down West

Main Street in Batavia.  T.13, 29.[1] Baldwin saw a car that matched the car description, but did not think it was moving erratically. T.14. Nevertheless, he followed it to an A-Plus convenience store and gas station, a block and a half away. T.15-16, 29. Baldwin approached and asked the driver, Orlando Torres ("Torres"), and the passenger, Petitioner, for identification. Neither could produce photograph identification, and Torres gave the officer his brother's name. T. 16, 18-20, 32.

As Off. Baldwin attempted to verify the mens' identification, Deputy Sheriff Brian Thompson ("Dep. Thompson") and his search dog arrived at the gas station. T.20, 54, 106, 110. Petitioner and Torres told the deputy that they had been driving to Torres' relative's home in Bergen. T.111-13. When the deputy asked which relative they were visiting, the men gave conflicting answers: Torres said that it was his uncle and Petitioner said that it was Torres' cousin. T.113. Petitioner told the deputy that he had known Torres for two or three years; Torres told him that he had known petitioner since they were "little kids". T.114. Dep. Thompson noticed that Petitioner appeared "very nervous".  Id.

The deputy smelled alcohol in the car and on Torres' breath, and saw that Petitioner had a beer can in a bag between his legs. T.113, 130.

Although Petitioner told the deputy that the car belonged to a friend, the deputy saw a receipt lying in the car which bore

---

[1]

Citations to "T.__" refer to the pages of the trial transcript; citations to "S.__" are to the transcript of the sentencing hearing.

Petitioner's name; it was dated May 20, 2004 and reflected Petitioner's rental of a tuxedo for a June 19, 2004 event. T. 115-16. The deputy asked Petitioner why, if the car belonged to a friend, it contained paperwork bearing Petitioner's name, and Petitioner responded, in a "hushed" voice, that the car belonged to his girlfriend and was registered to her father. T.117-19.

In the meantime, because Off. Baldwin was unable to verify Torres' identification, the officers brought the men to the police station. As Dep. Thompson moved the car, which was blocking the gas pumps, he detected a "really strong[ ]" smell of marijuana inside the car. T.21-22, 120-21. Dep. Thompson and another deputy remained with the car while the officers questioned Petitioner and Torres at the precinct.

When Off. Baldwin returned to the car, Dep. Thompson allowed his search dog to walk around the car. T.22-23, 122. The dog jumped through the open driver's side window and started scratching and biting at the console. The dog behaved the same way near the rear quarter panel by the bumper. T.123.

These officers were joined by Detective Todd Crossett. ("Det. Crossett"). T.22, 23, 53, 54, 124. At that point, the officers learned that Torres had an open arrest warrant in Rochester. T.124. The officers searched the car and found marijuana under the cup-holder. T.124.

In the trunk, in the area where the search dog had given the signal he detected a controlled substance, they found a brown paper bag covered with packing tape. T.125.  The package measured six

-3-

inches long by four or five inches wide, and weighed 13.2 ounces. T.25, 57, 128. The bag was partially covered with the trunk rug, and some dryer sheets and scented soap were lying nearby. T.25, 26, 54, 125. A field test on the packaged substance yielded positive results for the presence of cocaine. T.57, 65, 127. Forensic testing confirmed the substance was cocaine, and that the package weighed 365.35 grams, or 12.88 ounces. T.96-105.

Once at the police station, Det. Crossett interviewed Petitioner, who waived his <u>Miranda</u> rights and gave an unsigned statement. T.94. According to Petitioner, Torres went to his house in Rochester and asked Petitioner to drive him to his (Torres') cousin's home in Batavia. T.73. Torres, who owed Petitioner $200, said that he could repay Petitioner at the cousin's house.

Petitioner agreed, but made Torres drive because Petitioner's license was not valid. On the way to Batavia, they stopped for gas and Petitioner bought beer. T.73. They continued toward Batavia, and pulled into an A-Plus convenience store. T.73. That was when they were stopped by Off. Baldwin.

Petitioner told the detective that the car belonged to his girlfriend, and that she let him drive it all the time. T.74. When the detective told Petitioner that cocaine was found in the trunk, Petitioner responded that he did not know about it, and that it did not belong to him. T.75, 93.

**2. The Defense Case**

Torres testified that as a result of the events of June 16, 2004, he pleaded guilty to second-degree drug possession. T.174,

187. Torres had previously been convicted of third-degree drug selling in 1991, unauthorized use of a vehicle in 1993, and second degree criminal trespass in 1995. T.185, 187, 193. Torres, who did not read English well and testified through a Spanish interpreter, wrote a letter in English with the help of another inmate to Petitioner's trial attorney essentially confessing that it was his cocaine found in the car. T.175-77.

Torres testified that he had placed the cocaine in the car on June 16, 2004, and that Petitioner was not with him when he did so. T.179. Torres placed the drugs in a hole in the corner of the trunk. T.179. Torres claimed that on that night, he told either Off. Baldwin, Det. Crossett or Dep. Thompson that Petitioner had nothing to do with the cocaine. T.181.

In his own criminal proceeding, Torres admitted that he moved to withdraw his guilty plea on the basis that he did not know who put the cocaine in the car-contrary to his testimony at Petitioner's trial. T.186. However, he did subsequently withdraw that motion. T.186. Torres explained on cross-examination that he could not read or understand his own motion, as it was written in English. T.190-92. He claimed that an inmate had written the motion for him, and explained that he had copied this inmate's translation in his own handwriting. T.190, 193.

Torres testified that he did not recall telling a probation officer that two other people had placed the cocaine in the car. He claimed that he bought the cocaine "on the street" for $6,800 from someone named "Poppo", and that he planned to sell it. T.195-98.

According to Torres' trial testimony, on the night of June 16, 2004, Torres asked Petitioner for a ride to Bergen, New York, and Petitioner told Torres to drive because Petitioner's license had been suspended. T.198. Torres explained that he had been owed $400, and he was planning to re-pay Petitioner $200 that Torres himself owed Petitioner. T.198.

### 3.   Verdict, Sentencing, and Post-Conviction Proceedings

On September 22, 2005, the jury returned a verdict finding Petitioner guilty of the sole count charged in the indictment- first degree criminal possession of a controlled substance. T.290-92. On November 3, 2005, the trial court sentenced Petitioner to a determinate prison term of ten years, plus five years of post-release supervision. S.11.

Prior to perfecting his appeal, Petitioner filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, which was unsuccessful. Petitioner's conviction unanimously affirmed on direct appeal. People v. Washington, 50 A.D.3d 1539 (App. Div. 4th Dept.), lv. denied, 11 N.Y.3d 742 (N.Y. 2008).

### 4.   The Habeas Petition

In his pro se petition for a writ of habeas corpus filed on September 11, 2009, Petitioner asserts that he is entitled to relief because (1) the prosecutor inadequately instructed the grand jury as to the automobile presumption; (2) trial counsel rendered ineffective assistance during plea negotiations; (3) he was deprived of a "fair and complete hearing of" his Fourth Amendment

claims; (4) the trial court and the prosecutor committed numerous errors; (5) the automobile presumption, as applied to Petitioner's case, was unconstitutional; (6) the evidence of guilt was legally insufficient; (7) his sentence violated the Eighth and Fourteenth Amendments; (8) the trial court's application of mandatory procedural bars to his C.P.L. § 440.10 claims was contrary to clearly established Supreme Court precedent; (9) he was deprived of due process and "fundamental fairness" by the trial court's failure to grant a hearing on his C.P.L. § 440.10 motion, and denial of the requested relief; and (10) petitioner was deprived of the effective assistance of counsel by counsel's "numerous failures" at trial.

## III. Discussion

### A.   Ineffective Assistance of Trial Counsel

#### 1.   The Strickland Standard

The well-established standard for reviewing an ineffectiveness of counsel claim is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a petitioner to satisfy a two-prong test by showing that (1) his counsel supplied deficient representation that "fell below an objective standard of reasonableness . . . under prevailing professional norms"; and (2) he suffered prejudice as a result. 466 U.S. at 687-88. Although the Strickland test consists of two prongs, a reviewing court need not address both, and where it can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," the court should do so. Id. at 697.

### 2.    Counsel's Alleged Errors

#### a.    Erroneous Plea Advice

##### 1.)  Background

In his C.P.L. § 440.10 motion, Petitioner argued that his counsel was ineffective because he purposely or negligently misled him as to the "true nature" of the automobile presumption and, as a result, caused Petitioner to reject a favorable plea bargain. According to Petitioner, counsel advised him that if Torres took responsibility for the drugs, Petitioner could not be found guilty of drug possession, notwithstanding New York's automobile presumption. The "automobile presumption" states that "[t]he presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found." N.Y. Penal Law § 220.25(1). Petitioner claimed that had he known that the question of whether petitioner possessed the drugs was one of fact for the jury, he would not have rejected a guilty plea offer involving a sentence-promise of three years to life.

The C.P.L. § 440.10 court held that insofar as his claim was _dehors_ the record, Petitioner failed to support it with an affidavit from counsel. Moreover, even assuming _arguendo_ that Petitioner was not apprised of the presumption, the C.P.L. § 440.10 court could not conclude that Petitioner would have accepted the plea offer had he known of the presumption. As the C.P.L. § 440.10 court noted, the presumption "is, as charged to the jury, only a

permissive inference which may be rejected by the finder-of-fact."
See People v. Leyva, 38 N.Y.2d 160. Whether Petitioner knew about
the automobile presumption or not was immaterial since, as the
C.P.L. § 440.10 court noted, "his contention throughout these
proceedings, from arraignment to bail review, through his rejection
of a plea offer comparable to that given his codefendant, through
trial and the presentence investigation, has been that he was
completely unaware of the drugs in the vehicle."

Petitioner amplified his claim in his motion for
reconsideration of the denial of C.P.L. § 440.10 relief, to which
he attached his fiancée's and Torres' affidavits, along with
evidence that Petitioner claimed trial counsel should have
uncovered in his investigation, such as a report showing that no
marijuana was found, photos of the "destroyed" trunk panel, and
Petitioner's complaint about counsel to the Disciplinary Committee.
The court denied the motion, finding that petitioner's fiancee's
affidavit allegations were "belied by counsel's indications to the
contrary on the record." Ex. J at 2. The court also found, based on
Petitioner's moving papers that trial counsel had previously
supplied Petitioner with a letter which "'included not only [his]
research but also an explanation of the law as it related to his
suppression motion, but also any rulings made during the trial.'"
However, the C.P.L. § 440.10 court noted, a copy of that letter was
"conspicuously absent" from Petitioner's motion papers.

## 2.)  **Analysis**

Trial attorneys must convey all plea offers to the client, and are under "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (citing Boria v. Keane, 99 F.3d 492, 497-98 (2d Cir. 1996)). To that end, defense counsel must inform his client of the terms of the plea offer, Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999), and "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed[,]" Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000); see also United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (during plea negotiations, counsel must correctly inform the defendant of his maximum sentencing exposure if he were to be convicted after trial).

To establish that counsel was ineffective during plea proceedings, a petitioner must show that he suffered prejudice as a result of counsel's errors, which has been interpreted by the Supreme Court as requiring the petitioner to show that he would have pled guilty if advised to do so. Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Aeid v. Bennett, 296 F.3d 58, 64 (2d Cir. 2002). A petitioner must provide some objective evidence, in addition to his own statements, that he would have pled guilty but for counsel's erroneous advice. Gordon, 156 F.3d at 381; see also Pham, 317 F.3d at 182. The objective evidence can consist of a

great disparity between the actual sentence length and the sentence exposure erroneously conveyed by counsel, for example. Gordon, 156 F.3d at 381. In determining whether a petitioner has shown a reasonable probability that the outcome would have been different but for counsel's erroneous advice, "the fact-finder will primarily have to make a determination of [the petitioner's] credibility." Cullen, 194 F.3d at 407.

Applying these standards, it is clear that Petitioner's counsel was not ineffective. First, counsel certainly communicated the offer, and Petitioner does not claim that counsel did not advise him as to petitioner's sentencing exposure, or that counsel misadvised him in that regard. Second, Petitioner's claim that he was prejudiced by counsel's alleged advice to go to trial is not credible. The trial court made specific factual findings that were entirely reasonable based upon the record before it. For instance, the trial court determined that Petitioner's credibility was undermined by his failure to provide the C.P.L. § 440.10 court with counsel's letter to Petitioner explaining the results of counsel's research, the relevant law and the trial rulings. Petitioner has not sustained his burden of rebutting the trial court's factual findings by clear and convincing evidence. See 28 U.s.C. § 2254(e)(1).

### b. Failure to Properly Litigate Issues at the Suppression Hearing

Petitioner argues that trial counsel should have argued that the consent to search and to move the car was illegally obtained,

that the "dog sniff" search was illegal, and that the police exceeded the parameters of an inventory search. These contentions are factually baseless. Trial counsel made these arguments in his memorandum of law in support of the suppression motion. <u>See</u> Respondent's Exhibit ("Resp't Ex.") O at A.120-37. Accordingly, this claim is summarily dismissed. <u>See</u> <u>Costanzo v. United States</u>, 758 F. Supp. 869, 875 (S.D.N.Y. 1990) (holding that § 2255 claim that he was wrongly convicted by government witness' perjured testimony "must be summarily dismissed" where claim was "groundless and lacking in substance; . . . assert[ing] no more than thinly veiled and baseless allegations . . . ").

### c. Failure to Renew the Motion for a Trial Order of Dismissal

Under the circumstances here, trial counsel's failure to renew his motion for a trial order of dismissal did not prejudice Petitioner because even though the Appellate Division found that the claim had not been preserved with a TOD motion, it nevertheless rejected the claim on the merits. <u>People v. Washington</u>, 50 A.D.3d at 1539. <u>See</u> <u>Waters v. McGuiness</u>, No. 99-CV-0615, 2003 WL 21508318, at *3 (E.D.N.Y. June 16, 2003) ("The Appellate Division reached the merits of the claim on direct appeal and held that the verdict was legally sufficient to establish guilt beyond a reasonable doubt and that it was not against the weight of the evidence. Even if counsel was ineffective for failing to preserve the claim, therefore, petitioner was not prejudiced because the Appellate Division entertained the claim and rejected it on the merits."), <u>aff'd</u>, 99

Fed. Appx. 318 (2d Cir. 2004); accord Gaskin v. Graham, 08-CV-1124, 2009 WL 5214498, at *25 (E.D.N.Y. Dec. 30, 2009).

The Appellate Division also rejected Petitioner's claim that the verdict was against the weight of the credible evidence, after exercising its statutory power to review the underlying facts, which demonstrates further that the evidence  here was legally sufficient for purposes of satisfying the due process clause. Horne v. Perlman, 433 F. Supp.2d 292, 300 (W.D.N.Y. 2006) ("The appellate court found that the weight of the evidence supported [petitioner's] conviction so, a fortiori, his conviction was supported by legally sufficient evidence."); People v. Danielson, 9 N.Y.3d 342, 349 (N.Y. 2007) ("Necessarily, in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt.").

### d.   Failure to Object to Jury Charges

Petitioner argues that trial counsel unreasonably failed to object to the jury instructions regarding accessorial liability, constructive possession, and the automobile presumption. He contends that the trial court should not have charged accessorial liability or constructive possession to the jury "because the prosecutor failed to produce any forensic evidence that [Petitioner] placed the drugs in the car save for the fact that they were in the trunk. . . ." Pet's Mem at 69. Petitioner's appellate counsel argued that trial counsel was unprepared to state

objections to the constructive possession charge, but did not explain why the instruction should not have been given. Resp't Ex. M at 34. This is telling, for the Court cannot discern any basis for finding that the charge on constructive possession or accomplice liability were not warranted under New York law. See People v. Manini, 79 N.Y.2d 561, 572-74 (N.Y. 1992) (constructive possession). Contrary to Petitioner's contention, the prosecutor presented ample evidence connecting Petitioner to the car and placing him in a position to exercise custody and control over the cocaine. Petitioner admitted that the car belonged to his girlfriend and was registered in his girlfriend's father's name; a receipt with Petitioner's name on it was found inside the car; and Petitioner told police that Torres

had approached Petitioner and asked for a ride. T.73, 116-16, 119.

Furthermore, the trial court properly instructed as to the permissive nature of the statutory automobile presumption. See People v. O'Brien, 212 A.D.2d 741, 742 (App. Div. 2d Dept. 1995) (citing County Ct. of Ulster County v. Allen, 442 U.S. 140, 160-61; other citations omitted).[2] Accordingly, because the court

---

[2]

Specifically, the trial court stated:

[U]nder our law the presence of a controlled substance in an automobile is presumptive evidence of knowing possession of that substance by each and every person in the automobile at the time the controlled substance was found. What this means is that if the People have proven beyond a reasonable doubt that it was in a vehicle then you may, but are not required to, infer from that fact that each and every person inside the vehicle where the controlled substance was found was in knowing possession of it. Whether or not to draw that inference is for you to decide and will depend entirely upon your evaluation of the evidence.

T.260-61.

instructed the jury that it may, but was not required, to infer possession, the "presumption could not possibly operate as tantamount to a directed verdict." Lopez ex rel. Garcia v. Curry, 583 F.2d 1188, 1191 (2d Cir. 1978) (citing People v. Leyva, 38 N.Y.2d 160, 167 (N.Y. 1975)). Moreover, the instruction was proper because it included the instruction that the jury could reject or accept the inference "entirely upon [its] evaluation of the evidence," and the repeated admonitions that the burden of proof remained with the People. Glenn v. Bartlett, 98 F.3d 721, 727 (2d Cir. 1996). Because the court's charge appropriately conveyed to the jury the manner in which it should apply the presumption, the charge was proper, and counsel's failure to object to it was not unreasonable.

Because any objection to these charges would have been overruled, Petitioner was not prejudiced by trial counsel's failure to object. See, e.g., Spears v. Spitzer, 02-CV-2301, 2005 WL 588238, at *17 (E.D.N.Y. Mar. 14, 2005).

B.   **Fourth Amendment Violations**

Petitioner contends that there was an "unconscionable breakdown" in the state's procedures for considering Fourth Amendment issues because the Appellate Division allegedly did not address every suppression issue argued to it. People v. Washington, 50 A.D.3d at 1539, 1540-41. Petitioner's claim is barred by the doctrine of Stone v. Powell, 428 U.S. 465, 481-82 (1976).

It is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. Stone v. Powell, 428 U.S. at 482. The Second Circuit has interpreted Stone v. Powell to require is that the State provide a defendant the opportunity to litigate a Fourth Amendment claim. McPhail v. Warden, Attica Corr. Fac., 707 F.2d 67, 69-70 (2d Cir. 1983). The Second Circuit has suggested that habeas review a Fourth Amendment claim would be possible if a petitioner demonstrated either that the state failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner cannot and does not argue that New York failed to provide him with "corrective procedures." Federal courts in this Circuit have approved New York's procedure for litigating Fourth Amendment claims embodied in New York's Criminal Procedure Law. Id. at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Here, Petitioner took advantage of these procedures and extensively litigated his Fourth Amendment claims at a two-day-long Huntley/Mapp hearing, following which trial counsel filed a lengthy memorandum of law in support of suppression, and the trial court issued a comprehensive 10-page decision denying suppression. On appeal, appellate counsel and Petitioner both raised suppression arguments, which were extensively addressed on

the merits by the  Appellate Division. Petitioner's disagreement
with the state courts' reasoned suppression rulings does not
constitute an "unconscionable breakdown" in the corrective
procedures available for litigating Fourth Amendment claims.
Accordingly, Petitioner has not demonstrated entitlement to any
further review of his claims an illegal search and seizure.

   **D.   Cumulative Trial Error**

   Petitioner argues that the cumulative effect of alleged errors
by the trial judge and the prosecutor deprived him of a fair trial.

   **1.   Erroneous Preclusion of Evidence to Rebut the
          Automobile Presumption**

   Petitioner first argues that the trial court erred in allowing
Torres' attorney to testify "to the fact that Torres put the drugs
in the car" and should have permitted admission of the letter that
Torres wrote to petitioner's counsel that likewise asserted that
Torres had placed the cocaine in the car. He contends that this
evidence would have been admissible to rebut the implication,
raised by the prosecutor's cross-examination of Torres, that
Torres' testimony that he had placed the drugs in the car was a
recent fabrication.

   Respondent argues that the factual premises of Petitioner's
claims are wrong on two bases: First, Torres did not take
responsibility for the drugs in the letter but instead insinuated
that "some friends" had dropped the cocaine in the car. Second, the
prosecutor, in cross-examining Torres, did not imply that
Petitioner was one of the two men.

Petitioner alleges that the prosecutor's question to Torres regarding whether Torres had told a probation officer "that there were two other guys who . . . put the drugs in the car?" suggested that Petitioner was one of the two men. T.195-96. Before Torres testified, Petitioner's counsel indicated that he might call Torres' counsel, Attorney Ader, to testify that Ader had contacted Petitioner's counsel to tell him "what Mr. Torres had to say about [Petitioner]." T.169-70. The trial court explained that the testimony would be inadmissible because it was a prior consistent statement. T.170.

After Torres testified, Petitioner's counsel agreed with the trial court that the prosecutor had made no claim of recent fabrication and he apparently abandoned his request to call Attorney Ader to testify. T.202-03. Counsel then sought admission of Torres' letter to Petitioner's counsel, but the trial court disagreed with counsel's argument that the letter would not be offered for the truth of the statement, and denied the application. T.203-04.

Petitioner's claim of evidentiary error is based upon his continued insistence that the prosecutor implied Torres' testimony was a recent fabrication. However, trial counsel withdrew his request to call Attorney Ader because he realized that there had been no suggestion of recent fabrication by Torres.

Furthermore, it was not unreasonable for trial counsel and the trial court to conclude that the prosecutor's question to Torres did not implicate Petitioner, given that the prosecutor asked about

"two other guys". And, contrary to Petitioner's assertion, Torres' letter to defense counsel did not "attest[ ] to the fact that Torres put the drugs in the car." Pet's Mem at 38. Instead, it suggests that "some friends" placed it in the car.[3]

The Appellate Division's rejection of Petitioner's claim was not incorrect as a matter of New York state evidentiary law, which holds that prior consistent statements are inadmissible where there is no claim of recent fabrication. See People v. Umali, 10 N.Y.3d 417, 429 (N.Y. 2008); People v. Melendez, 55 N.Y.2d 445, 451-52 (N.Y. 1982).

## 2.    Failure to Grant an Adjournment

Petitioner next argues that the trial court erred in not granting a one-day adjournment to allow a juror tending to a sick child an opportunity to return to service. Pet's Mem at 38-39. C.P.L. § 270.35(2)(a) provides that a court must make a "reasonably thorough inquiry" concerning a juror's claims of illness, and if "the court determines that there is no reasonable likelihood such juror will be appearing, in court within two hours of the time set

---

[3]     The letter states, in its entirety as follows:

To who ever it may concern about the situation that took place on 6-16-04 in the Town of Batavia, NY. I Orlando Torres went to my friends house Elroy Washington at 163 Cummings Street Rochester, NY[.] He was in the shower, so I barold [sic] the car. I than went to Ave D in Roch NY and I let some friends use the car for about a half hour when they brought the car back to me[.] I went back to my friend Elroy's house to pick him up when he got into the car. I drove to my cousins [sic] house in the town of Bergin [sic] on Route 33[.] I passed the exit and ended up in Batavia, NY where I got pulled over by the Police. I gave the Police a false name because I had a warrant in Rochester N.Y. Elroy had nothing to do with this situation. [N]obody put any pressure on me to say this, I'm doing it out of my own free will.

Resp't Ex. N at 29.

by the court for the trial to resume, the court may presume such juror is unavailable for continued service and may discharge such juror." N.Y. Crim. Proc. Law § 270.35(2)(a).

Here, after the close of the proofs, the trial court ordered the trial to resume at 9:30 a.m. the next day for summations. T.21). At 9:53 a.m. the next day, the trial court advised counsel that on the previous evening, a juror told the Commissioner of Jurors that her three-year-old was "quite ill" and might have pneumonia, and that she had to take her child to the doctor and could not come in that day. T.211-12. The prosecutor, citing his belief that she was a single, stay-at-home mother, said that he did not object to replacing the juror with an alternate. T.212. Defense counsel asked the judge to contact the juror, and the judge called the juror and left her a voicemail on her cell phone. T.213-14. The trial judge also explained that the Commissioner of Jurors had told the court that the juror had told her that she had "no one else to take care of [her son] other than herself that day". T.214.

Petitioner's counsel then acknowledged that the trial court had the discretion to substitute an alternate juror under C.P.L. § 270.35(2), after two hours, but asked the court for a day's adjournment. T.215. The court then ordered that the juror would be replaced with an alternate, explaining, "Well, it does appear to me that there is no reasonable possibility she'll be available within two hours of the time we were set to start today . . . . And I also indicate that I didn't tell any of the jurors there was any possibility that the trial would go beyond today, so who knows what

other problems we'd be getting into with the other jurors if I
continued it till tomorrow". T.215-16.

The Appellate Division rejected Petitioner's claim, holding
that "the court did not abuse its discretion in discharging an
absent juror after 'a reasonably thorough inquiry' into her
availability established that she would not be available within two
hours of the time at which the trial was scheduled to resume."
People v. Washington, 50 A.D.3d at 1540 (citing, inter alia, C.P.L.
§ 270.35(2)).

At most, Washington has alleged an error of state statutory
law, not an error of constitutional magnitude. In any event, the
Court agrees with the Appellate Division that there was not, in
fact, an error of state law. The trial court's decision was a
proper exercise of discretion in light of the circumstances
presented by the juror's child's illness. On habeas review, the
state court's findings are presumed correct, 28 U.S.C.
§ 2254(e)(1), and here, Petitioner has provided no evidence to
rebut the correctness of the court's finding that a juror with a
pneumonia-stricken child would not be able to appear for service
within two hours. Moreover, the trial court clearly followed the
procedure set forth in C.P.L. § 270.35(2), and Petitioner does not
claim otherwise. Finally, petitioner has articulated no prejudice
arising from the substitution of the juror, "or that some
constitutional infirmity ensued as a result of the trial court's
decision." Irwin v. Dowd, 366 U.S. 717, 723 (1961).

### 3.   Erroneous Response to the Jury's Read-Back Request

During deliberations, the jury sent a note to the trial court which read as follows: "Please provide us with the portion of Crossett's testimony where he answers the questions about Torres' statement that [Petitioner] was not involved." T.274. The trial court explained to both counsel that it "would have to respond to them that we have searched through Detective Crossett's testimony and there was no question involving Mr. Torres' statement that [Petitioner] was not involved. It was never covered in Crossett's testimony. And if they want to ask for a portion of another witness, they can ask." T.277.

Over trial counsel's objection, T.274-79, the trial court informed the jury that "[t]here is no such question and answer or subject in Detective Crossett's testimony at all." T.282. Review of Det. Crossett's testimony confirms that he did not testify about Torres' statement that Petitioner was not involved. See T.52-95. Thus, as Respondent argues, there is no factual basis for Petitioner's claim. Accordingly, it must be dismissed.

Because the Court concludes "that there were no trial errors [], much less cumulative errors, this claim fails." United States v. Yousef, 327 F.3d 56, 46 161 (2d Cir.)(internal citation omitted), cert. denied, 540 U .S. 933 (2003); see also Stewart v. Artuz, 97-CV-0583, 2000 WL 33743379, at *5 (N.D.N.Y. Oct. 17, 2000) (citing Styles v. Zandt, 94-CV-1863, 1995 WL 326445, at *11 (S.D.N.Y. May 31, 1995) (finding petitioner failed to establish that cumulative effect of claimed errors-some of which were not

subject to federal habeas review due to petitioner's procedural default-deprived petitioner of fair trial), aff'd without opn., 101 F.3d 684 (2d Cir.), cert. denied, 519 U.S. 936 (1996)).

### D.   Prosecutorial Misconduct

Petitioner claims that numerous summation comments by the prosecutor deprived petitioner of a fair trial. The Appellate Division's rejection of the claim in its catch-all holding was not contrary to, or based on an unreasonable application of, Supreme Court law.

"Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (quoting United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (internal quotation marks omitted)); see Donnelly v. DeChristoforo, 416 U.S. 637 (1974); Darden v. Wainwright, 477 U.S. 168 (1986). To reverse a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. Id.; see also United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."). "It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." United States v. Rodriquez, 968 F.2d 130, 142 (2d Cir. 1992). "The severity of the misconduct, curative measures, and the certainty of conviction

absent the misconduct are all relevant to the inquiry." Blissett v.
Lefevre, 924 F.2d 434, 440 (2d Cir. 1991) (citations omitted).

Petitioner challenges the prosecutor's argument that
Petitioner's claim that he did not know about the cocaine in his
trunk was the adult equivalent of "the dog ate my homework." T.230.
In response to defense counsel's argument that the automobile
presumption could arguably hold a baby in a car liable for drugs,
the prosecutor explained that the presumption was a recognition of
"common sense" in that it would be difficult to believe that
someone would store contraband in a friend's car without both
knowing. T.232, 233, 236. The prosecutor's argument did not exceed
the bounds of what was appropriate and fair comment on the
evidence, and it was fair response to remarks made by the defense
counsel during summation. See United States v. Ricco, 549 F.2d 264,
274-75 (2d Cir. 1977) (holding that were where prosecutor's
assertedly improper comment in rebuttal summation came in response
to defense allegations that the Government was improperly paying
its witnesses in order to obtain their testimony and that the
"Witness Protection Program" was about to be revealed as a major
government scandal, prosecutor did not exceed the bounds of fair
comment by offering his opinion on worth of Government's program).

Petitioner claims prejudice from the prosecutor's comment to
the effect that where there are two version of the same story,
someone is not telling the truth. T.238. It was not improper to
call the jury's attention to the fact that while Torres claimed to

have borrowed the car for several hours, Petitioner's statement to Detective Crossett did not mention that Torres had borrowed the car. The prosecutor's comment was a fair response to defense counsel's argument that the jury must decide whether it believed Torres. T.226-27. See United States v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999) ("[I]t is not ordinarily improper for the prosecution to make temperate use of forms of the word 'lie' to highlight evidence directly conflicting with the defense's testimony, or 'to characterize disputed testimony' where credibility was clearly an issue, particularly where 'the prosecutor tied to the pertinent evidence of record' each instance in which the defendant supposedly 'lied,'.") (quoting United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987)).

Petitioner also complains that the prosecutor referred to Petitioner as the owner of the car several times. The Court agrees with Petitioner that this was erroneous. However, the trial court corrected the prosecutor. T.235. The prosecutor did not repeat the error but instead drew the jury's attention to the evidence which demonstrated Petitioner's control over the car. T.235. See Blissett, 924 F.3d at 441 ("[T]he trial judge responded promptly to the objections, twice instructing the jury to disregard the offending testimony. This was sufficient to 'eliminate any possible prejudice from the prosecutor's remarks.'") (quotation omitted).

Finally, Petitioner assigns error the prosecutor's comment on the unlikelihood that Torres would store $6800 worth of cocaine in

the car without Petitioner's knowledge, in light of the evidence that Petitioner exercised dominion and control over his girlfriend's car. This was fair comment on the evidence and a fair response to defense counsel's argument.

None of the prosecutor's comments, considered singly or together, were "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).

### E. Unconstitutionality of the Statutory "Automobile Presumption"

Petitioner argues that New York's statutory "automobile presumption" is unconstitutional as applied to his case. He contends that Torres' testimony eliminated the availability of the presumption to the prosecutor, and that the trial court's jury instruction on the presumption was deficient. This claim is without merit, as the Appellate Division found.

The Second Circuit held, in Lopez ex rel. Garcia v. Curry, 583 F.2d 1188, 1191, 1192 (2d Cir. 1978), that the automobile presumption is constitutional as applied to large, "dealership" quantities of cocaine. See also Glenn v. Bartlett, 98 F.3d 721, 726-27 (2d Cir. 1996) (holding that New York's automobile presumption, deeming presence of drugs in automobile presumptive evidence that every person in automobile controls the drugs, did not violate due process as applied to defendant, who claimed he was unaware that suitcase in car in which he was a passenger contained

-26-

cocaine and heroin; defendant had access to trunk locking mechanism and key to suitcase, got out and slammed trunk before he and his companion fled police, and was seen throwing large bag into river during police chase).

Here, a "dealership quantity" of cocaine (a six-inch-long, four- or five-inch-wide package containing 12.88 ounces of cocaine, see T.25, 57, 96-105, 128), was found in the trunk of Petitioner's girlfriend's car, in which also was discovered a receipt bearing Petitioner's name. The jury reasonably could have relied on this evidence to conclude that Petitioner had exercised custody and control over the car and as well as over drugs that were hidden in the trunk of the car.  Contrary to Washington's contention, the evidence showed the required "rational connection" between the basic facts proven and the presumed fact (i.e., knowing possession of the drugs), and the automobile presumption was not unconstitutional as applied to hi case. See County Court of Ulster County v. Allen, 442 U.S. at 165 (holding that a permissive presumption-one that permits but does not require the jury to find the presumed fact-satisfies due process if, as applied in the particular case, there is a "'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former").

F.    **Legal Insufficiency of the Evidence**

Petitioner argues that the evidence proving his knowing possession of the cocaine was legally insufficient. Under the clearly established law set forth in Jackson v. Virginia, 443 U.S. 307 (1979), a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction, Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)), and a habeas court is required to consider the trial evidence in the light most favorable to the prosecution and uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

"Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996)(citing United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994)). Moreover, a habeas court must defer to the assessments of the credibility of the witnesses that were made by the jury and may not substitute its view of the evidence for that of the jury. Jackson, 443 U.S. at 319; Maldonado, 86 F.3d at 35. Thus, under this "rigorous standard," a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v.

-28-

Robinson, 34 F.3d 60, 66 (2d Cir. 1994), cert. denied, 514 U.S. 1066 (1995) (quotation omitted).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)). Under New York law, to be guilty of first degree criminal possession of a controlled substance, a person must knowingly possess a controlled substance weighing eight ounces or more. N.Y. PENAL LAW § 220.21(1).

As discussed above, the prosecutor relied on the automobile presumption, P.L. Law § 220.25(1), which states that "[t]he presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found."

Because Petitioner did not have the package of cocaine in his physical possession at the time of his arrest and had not been seen selling it, the prosecution was obligated to prove that Petitioner constructively possessed the package. Constructive possession under New York law requires a showing that the defendant "exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." People v. Manini, 79 N.Y.2d 561, 573 (N.Y. 1992); see also N.Y. PENAL LAW § 10.00(8).

-29-

The prosecutor also relied upon the theory of accessorial liability. See People v. Flayhart, 72 N.Y.2d 737, 741 (N.Y. 1988) ("Penal Law § 20.00 imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in conduct which constitutes the charged offense while himself 'acting with the mental culpability required for the commission' of that offense.") (emphasis in original); People v. Kaplan, 76 N.Y.2d 140, 144 (N.Y. 1990) ("Penal Law § 20.00 provides that a person may by held criminally liable as an accomplice when he performs certain acts and does so 'with the mental culpability required for the commission' of the substantive crime.").

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in its favor, the Court finds that the evidence amply met the constitutional standard. As recounted above in this Decision and Order, the car in which almost 13 ounces of cocaine was found belonged to Petitioner's girlfriend. Further evidence of Petitioner's "dominion and control" over the car was the tuxedo rental receipt with his name on it and the fact that he had asked Torres to drive the car to take them Batavia.  The Court must defer to the jury's credibility assessment of Torres, which was not unreasonable given that he had provided other explanations regarding who had placed the cocaine in the car, and there was no evidence that Torres had any connection to the car.

### G.    Vindictive Sentencing

Petitioner contends that his ten-year sentence, a sentence that falls within the permissible statutory range of between eight and twenty years, P.L. § 70.71(2)(b)(I), was punishment for going to trial. As for the claim that the sentencing court acted vindictively, "[t]he mere fact that the court, following conviction, imposed a sentence . . . approaching the maximum legal limit does not, in itself, demonstrate actual vindictiveness." Naranjo v. Filion, 02 Civ. 5849, 2003 WL 1900867, at *10 (S.D.N.Y. April 16, 2003). "While the vindictive imposition of additional punishment on a defendant for successfully attacking a first conviction violates due process, see Alabama v. Smith, 490 U.S. 794-98 (1998), 'in the give-and-take of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.'" Figueroa v. Greiner, 02 Civ. 5444, 2003 WL 249001, at *46 (S.D.N.Y. Feb. 3, 2005) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)). See also Bailey v. Artuz, 94-CV-1240, 1995 WL 684057, at *7 (N.D.N.Y. Nov. 15, 1995) ("[A] sentencing judge does not show vindictiveness or violate the due process clause by sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a lower penalty, has then been convicted of a more serious offense to the higher penalty authorized for the more serious offense.").

To show vindictiveness, a petitioner must offer additional evidence beyond merely a disparity between a pre-trial sentence offer and the length of the sentenced actually imposed after trial. Brown v. Donnelly, 371 F. Supp. 2d 332, 342 (W.D.N.Y. 2005) (rejecting petitioner's claim that he was sentenced vindictively for exercising his right to go to trial, "because the judge never stated or implied that the sentence was based on [petitioner's] refusal of the plea offer").

Here, Petitioner's only basis for finding vindictiveness is the fact that the sentence he was offered for pleading guilty to a lesser offense (three years) was longer than the ten-year sentence he received after trial. It is to be expected that there would be a disparity between sentences authorized and imposed for offenses in different classes of felonies. Moreover, the trial court never mentioned the prior plea bargain at sentencing. Finally, the sentence imposed was not the statutory maximum. Petitioner therefore has failed to carry his burden of demonstrating vindictiveness on the part of the sentencing judge.

## H.   Abuse of Discretion in Sentencing

The Second Circuit has rejected habeas claims that the trial court abused its discretion in sentencing, holding that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992).

Here, Washington did not receive the maximum sentence allowable under statute; his sentence was only two years above the statutory minimum. Regardless, the sentence was within the range authorized for the crime committed. Habeas courts in this Circuit consistently have rejected petitioners' claims of both abuse of discretion in sentencing and Eighth Amendment violations where their sentences are within the statutory range permitted. E.g., Peppard v. Fischer, 739 F.Supp.2d 303, 309 (W.D.N.Y. 2010) (Bianchini, M.J.) (citing Warren v. Conway, No. CV-07-4117, 2008 WL 4960454, at *30 (E.D.N.Y. Nov. 18, 2008)) (citing White, 969 F.2d at 1383); Alvarez v. Scully, No. 91 CIV. 6651(PKL), 1993 WL 15455, at *12 (S.D.N.Y. Jan. 11, 1993) (citing, inter alia, Bellavia v. Fogg, 613 F.2d 369, 373-74 (2d Cir. 1979)).

## I.  Violation of the Eighth Amendment

The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment." E.g., Harmelin v. Michigan, 501 U.S. 957, (1991). Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. See id.

When reviewing sentences imposed by state courts on habeas corpus review, the Supreme Court has instructed federal courts to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and

limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Solem, 463 U.S. at 290; see also United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir.1991) (finding that courts should review the disproportionality of sentences only in rare cases because the legislature's fixing of terms for imprisonment is presumptively valid).

The "gross disproportionality" principle finds sentences disproportionate to their crimes "only in the exceedingly rare and extreme case" and is reserved "for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 73-77 (2003) (internal quotation marks and citation omitted). Given the Supreme Court's precedent on this issue, this Court plainly not present one of those rare and extreme cases in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decisions. Petitioner's claim that his sentence violated the Eighth Amendment borders on the frivolous and is dismissed.

### I.   Procedural Errors by the C.P.L. § 440.10 Court

Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. See 28 U.S.C. § 2254(a). Habeas claims that focus only on the state's post-conviction remedy and not on the conviction that is the basis for the petitioner's incarceration are not cognizable on habeas review. See Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) ("Petitioner is further hampered by the fact no constitutional

provision requires a state to grant post-conviction review. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Moreover, because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim.") (citing Montgomery v. Meloy, 90 F.3d 1200 (7th Cir. 1996); Jones v. Duncan, 162 F. Supp.2d 204, 218 n.21 (S.D.N.Y. 2001).

Petitioner argues that the trial court's application of the mandatory procedural bar found in C.P.L. § 440.10(2)(c) is contrary to Supreme Court law, and that the court violated his due process rights in failing to order a hearing or any other relief on his C.P.L. § 440.10 application. Petitioner's claims, which merely allege error in New York's post-conviction review procedures, are not cognizable on habeas review and are dismissed. See Diaz v. Greiner, 110 F. Supp.2d 225, 235 (S.D.N.Y. 2000) ("Petitioner's unsupported assertion that the trial court denied his third C.P.L. § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review.") (quoting Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998)); see also Turner v. Sullivan, 661 F. Supp. 535, 540-41 (E.D.N.Y. 1987) (claim that trial court violated due process by denying C.P.L. § 440.10 motion without setting out findings, conclusions and its reasoning not cognizable on federal habeas review; "[p]etitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be

issued on the basis of a perceived error of state law."), aff'd, 842 F.2d 1288 (2d Cir.), cert. denied, 487 U.S. 1240 (1988).

## IV.   Conclusion

For the foregoing reasons, Elroy Washington's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R.App.P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person from this Decision and Order. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
          MICHAEL A. TELESCA
     United States District Judge

DATED:     October 11, 2011
           Rochester, New York